United States Court of Appeals,

Eleventh Circuit.

No. 96-5124.

Delfina MONTES, a Florida Resident, Plaintiff-Appellant,

v.

SHEARSON LEHMAN BROTHERS, INC., a Delaware Corporation, Defendant-Appellee.

Nov. 24, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-2153-CV–NCR), Norman Roettger, Jr., Judge.

Before CARNES and BARKETT, Circuit Judges, and REAVLEY[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Delfina Montes appeals from the district court's denial of her petition to vacate an arbitration board's decision denying her claim for over-time pay from her former employer, Shearson Lehman Brothers, Inc., pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*[1] Shearson asserts that, although Montes worked more than the 40 hours weekly that she recorded on her time-cards, she was exempt from the FLSA's overtime payment requirements because she held either an "administrative" or "executive" position. After she stopped working for Shearson, Montes sued for overtime pay pursuant to the FLSA. The federal district court to which Shearson removed the lawsuit referred the case to arbitration, and the arbitration board ruled that Shearson did not owe Montes overtime pay. The district court denied Montes's petition to vacate the arbitration board's

---

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]The FLSA requires, in part, that covered employees receive overtime pay when they work more than 40 hours a week. *See* 29 U.S.C. § 207(a)(1). However, certain employees are exempt from this requirement. *See* 29 U.S.C. § 213(a)(1).

decision, and Montes appeals.

Discussion

On appeal, Montes asserts that the district court erred in referring the case to arbitration, and that the arbitration board's decision was arbitrary, capricious, and violative of public policy. Her primary argument is that Shearson's attorney improperly urged the arbitration board specifically to disregard the FLSA to find in Shearson's favor and that the board apparently did so.

Initially, we reject Montes's claim that the district court improperly referred the case to arbitration.[2] We note that, in *Benoay v. Prudential-Bache Sec., Inc.,* 805 F.2d 1437 (11th Cir.1986), this court stated "[a] court may not order arbitration unless and until it is satisfied that a valid arbitration agreement exists," *id.* at 1440 (internal quotes and citation omitted). There is no question in this case that Montes signed a valid arbitration agreement when she first worked for Shearson, and most recently at Shearson's branch office in New Jersey in 1991. She argues, however, that the agreement should not be enforced because she did not sign it again when she moved to Shearson's Hallandale branch office. We see nothing in the agreement so limiting it. We do not find that simply moving between branch offices while the employer/employee relationship continues uninterrupted terminates the existing arbitration agreement between the parties. However, under the facts of this case, we do vacate the arbitration award and remand for referral to a new arbitration panel.

*Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775 (11th Cir.1993), delineates the general circumstances in which arbitration awards can be vacated:

---

[2]This circuit reviews the district court's order compelling arbitration on a *de novo* basis. *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 756 (11th Cir.1993), *cert. denied,* 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.,* 741 F.2d 342, 343 (11th Cir.1984).

Our review of commercial arbitration awards is controlled by the Federal Arbitration Act ("FAA"). See 9 U.S.C.A. §§ 1-16. Judicial review of arbitration awards under the FAA is very limited. *Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 932 (11th Cir.1990). The FAA presumes that arbitration awards will be confirmed, 9 U.S.C.A. § 9, and enumerates only four narrow bases for vacatur, none of which are applicable in case. In addition to these four statutory grounds for vacatur, we have recognized two additional non-statutory bases upon which an arbitration award may be vacated. First, an arbitration award may be vacated if it is arbitrary and capricious. *Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir.1992), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 1410, 1413 (11th Cir.1990); *United States Postal Serv. v. National Ass'n of Letter Carriers,* 847 F.2d 775, 778 (11th Cir.1988). Second, an arbitration award may be vacated if enforcement of the award is contrary to public policy. *Delta Air Lines, Inc. v. Air Line Pilots Ass'n,* 861 F.2d 665, 671 (11th Cir.1988), *cert. denied,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *U.S. Postal Service,* 847 F.2d at 777.

*Id.* at 778-79.[3]

Montes does not argue in this case that any of the statutory reasons for reversal of the arbitration board's decision are applicable.[4] She argues that the award should be vacated because the arbitrators were explicitly urged to disregard the law and, in light of the nature of the evidence presented, there is nothing in the record to show that they did not do so. To enforce the arbitration

---

[3]Pursuant to the Supreme Court's directions in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947-949, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995), appellate courts are instructed to review the district court's factual findings for "clear error" and examine its legal conclusions *de novo. See Lifecare Intern., Inc. v. CD Medical, Inc.,* 68 F.3d 429 (11th Cir.1995), *opinion modified,* 85 F.3d 519 (1996)(citing *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1188 (11th Cir.1995)).

[4]The four statutory grounds for vacating an arbitration decision are: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party may have been prejudiced; (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).

decision under these circumstances, Montes argues, is violative of public policy.[5]  Shearson's

counsel,[6] in his opening statement to the arbitration board, set the stage for the arguments to follow:

> I know, as I have served many times as an arbitrator, that you as an arbitrator are not guided strictly to follow case law precedent.  That you can also do what's fair and just and equitable and that is what Shearson is asking you to do in this case.

(Arbit. Tr. at 22).  Later, during his closing argument, Shearson's attorney again stated:

> You have to decide whether you're going to follow the statutes that have been presented to you, or whether you will do or want to do or should do what is right and just and equitable in this case.  I know it's hard to have to say this and it's probably even harder to hear it but *in this case this law is not right.*  Know that there is a difference between law and equity and I think, in my opinion, that difference is crystallized in this case.  *The law says one thing. What equity demands and requires and is saying is another.*  What is right and fair and proper in this?  *You know as arbitrators you have the ability, you're not strictly bound by case law and precedent.*  You have the ability to do what is right, what is fair and what is proper, and that's what Shearson is asking you to do.

(Arbit. Tr. at 435-36) (emphasis added).  The lawyer continued, and reiterated the argument he had

been making throughout the case, "[t]hus, as I said in my Answer, as I said before in my Opening,

and I now ask you in my Closing, not to follow the FLSA if you determine she's not an exempt

employee."  (Arbit.Tr. at 438).

It is certainly true that parties can establish the parameters of the arbitration explicitly in

their agreement.[7]  When a claim arises under specific laws, however, the arbitrators are bound to

---

[5]Montes's arguments are overlapping versions of three non-statutory reasons for vacating arbitration decisions, to wit:  that the decision (1) is arbitrary or capricious;  (2) is in manifest disregard of the law;  and, (3) is violative of public policy.  Although each of these three grounds could conceivably be encompassed in the other, courts, including this one, have treated these reasons as discrete and separate.  We shall, therefore, continue to do so here.  Because the thrust of this case involves the specific direction to disregard the law, we primarily focus on the "manifest disregard of the law" standard.

[6]We note that Shearson's appellate attorney did not represent Shearson at the arbitration hearing.

[7]Although, as the Supreme Court has stated, "all statutory claims may not be appropriate for arbitration...."  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652,

follow those laws in the absence of a valid and legal agreement not to do so. As the Supreme Court has stated, "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991)(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354-55, 87 L.Ed.2d 444 (1985)). Similarly, in *Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Court stated "we have indicated that there is no reason to assume at the outset that arbitrators will not follow the law; although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute," *id.* at 232, 107 S.Ct. at 2340 (citing to and summarizing *Mitsubishi Motors* ).

This does not mean that arbitrators can be reversed for errors or misinterpretations of law. In *Wilko v. Swan,* 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court indicated that although an erroneous interpretation of the law would not subject an arbitration award to reversal, a clear disregard for the law would. As the *Wilko* court stated, "[i]n unrestricted submission, ... the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Wilko,* 346 U.S. at 436-37, 74 S.Ct. at 187-88 (citation omitted). The Supreme Court has recently reiterated that a party that submits to arbitration may obtain relief from a federal court "only in very unusual circumstances," but that a party to arbitration can obtain relief from a federal court where the arbitration award was made in manifest disregard of the law.

---

114 L.Ed.2d 26 (1991).

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (citing to *Wilko* ).

Thus, every other circuit except the Fifth (which has declined to adopt any non-statutory grounds for vacating arbitration awards), has expressly recognized that "manifest disregard of the law" is an appropriate reason to review and vacate an arbitration panel's decision. *See Prudential-Bache Sec., Inc. v. Tanner,* 72 F.3d 234 (1st Cir.1995); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9 (2d Cir.1997); *United Transp. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376 (3d Cir.1995); *Upshur Coals Corp. v. United Mine Workers of America, Dist. 31,* 933 F.2d 225 (4th Cir.1991); *M & C Corp. v. Erwin Behr GmbH & Co., KG,* 87 F.3d 844 (6th Cir.1996); *National Wrecking Co. v. International Broth. of Teamsters, Local 731,* 990 F.2d 957 (7th Cir.1993); *Lee v. Chica,* 983 F.2d 883 (8th Cir.), *cert. denied,* 510 U.S. 906, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993); *Barnes v. Logan,* 122 F.3d 820, 821 (9th Cir.1997); *Jenkins v. Prudential-Bache Securities, Inc.,* 847 F.2d 631 (10th Cir.1988); *McIlroy v. PaineWebber, Inc.,* 989 F.2d 817, 820 n. 2 (5th Cir.1993)(rejecting any non-statutory grounds for vacating arbitration awards). *But see Gulf Coast Indus. Workers Union v. Exxon Co.,* 991 F.2d 244 (5th Cir.), *cert. denied,* 510 U.S. 965, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993) (in the context of a collective bargaining agreement, vacating arbitration award on the basis that it violated public policy)(decided after *McIlroy* ).

In this circuit, we have not found it necessary to expressly adopt this ground, as it was unnecessary for the resolution of the cases in which it was discussed. For example, most recently, in *Brown,* 994 F.2d at 775, the court found a rational basis for the award, holding that the decision at issue was neither arbitrary nor violative of public policy. In a footnote the court simply noted, without discussion, that other circuits had recognized manifest disregard of the law by an arbitration

panel as a non-statutory basis for vacatur, but that this court had not adopted the "manifest disregard" standard. *Id.* at 779 n. 3. In *Ainsworth v. Skurnick,* 960 F.2d 939 (11th Cir.1992), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993), the court determined that the arbitration panel's denial of relief was arbitrary and capricious, and it was thus unnecessary for the court to apply the "manifest disregard" standard. However, the court did note that "[t]he cases are unclear as to whether we have ever held that it would be error to vacate an arbitration award as being in manifest disregard of the law." *Id.* at 941. Prior to *Ainsworth,* in *Robbins v. Day,* 954 F.2d 679, 684 (11th Cir.), *cert. denied,* 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992), this court held that the statutory grounds for vacatur in the FAA did not apply, and further indicated that because there was a "proper basis" for the award, there were no non-statutory grounds for reversal. The *Robbins* court then added, "we decline to adopt the manifest disregard of the law standard." *Id.* at 684. Since the court found a proper basis for the arbitration board's decision, the standard was not applicable to the facts of that case. Earlier, in *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 1410 (11th Cir.1990), this court again held an arbitration award not to be arbitrary and capricious. The court briefly expressed doubt as to whether this court should adopt the "manifest disregard" standard, but decided that, even if the "manifest disregard" standard applied, it would not have been satisfied on the facts of that case. Finally, in *O.R. Sec. v. Professional Planning Assoc., Inc.,* 857 F.2d 742 (11th Cir.1988), this court affirmed the arbitration award, holding that the award did not violate Section 10(a) of the FAA, which, at the time of the decision, addressed fraud. The court also determined that, on the facts of the case, the arbitration board had not manifestly disregarded the law, as the standard had been defined by other circuits.

The thread that runs through our precedent in this regard is our reluctance to suggest explicitly or implicitly that an arbitration board's decision can be reviewed on the basis that its

conclusion or reasoning is legally erroneous. We do not permit review under these circumstances and reject any argument that to err legally always equates to a "manifest disregard of the law." *See Ainsworth,* 960 F.2d at 940 ("[c]ourts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation...."); *O.R. Sec.,* 857 F.2d at 747 ("[t]he courts which have recognized the manifest disregard of law standard define it as necessarily meaning "more than error or misunderstanding with respect to law.' ") (citations omitted).

Nonetheless, we must recognize and give meaning to the distinction made by the Supreme Court in *Wilko* between an erroneous interpretation of the law and a manifest disregard of it. That distinction becomes clear in the context of the cases requiring the arbitrator's adherence to law discussed above and the definition of the words contained within the term in question. "Manifest" means "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, undubitable, indisputable, evident, and self-evident." *Black's Law Dictionary* 962 (6th ed.1990). *See also American Heritage Dictionary of the English Language* 794 (New College ed. 1981) ("Clearly apparent to the sight or understanding; obvious."). "Disregard," in turn, means "[t]o treat as unworthy of regard or notice; to take no notice of; to leave out of consideration; to ignore; to overlook; to fail to observe," *Black's Law Dictionary* at 472; *see also American Heritage Dictionary* at 381 ("To pay no attention or heed to; fail to consider; ignore."). An arbitration board that incorrectly interprets the law has not manifestly disregarded it. It has simply made a legal mistake. To manifestly disregard the law, one must be conscious of the law and deliberately ignore it. *See O.R. Sec.,* 857 F.2d at 747 ("there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it."). In the case before us, that is precisely what the panel was flagrantly and blatantly urged to do. The arbitrators expressly took

note of this plea in their award when summarizing the parties' arguments. There is nothing in the award or elsewhere in the record to indicate that they did not heed this plea. In the absence of any stated reasons for the decision and in light of the marginal evidence presented to it, we cannot say that this is not what the panel did.[8] We conclude that a manifest disregard for the law, in contrast to a misinterpretation, misstatement or misapplication of the law, can constitute grounds to vacate an arbitration decision. We emphasize again that this ground is a narrow one. We apply it here because we are able to clearly discern from the record that this is one of those cases where manifest disregard of the law is applicable, as the arbitrators recognized that they were told to disregard the law (which the record reflects they knew) in a case in which the evidence to support the award was marginal. Thus, there is nothing in the record to refute the suggestion that the law was disregarded. Nor does the record clearly support the award.

Shearson argues that trial counsel's comments should be interpreted as saying that Montes simply did not qualify for overtime under the FLSA and therefore, the arbitrators were not bound by the FLSA. We can appreciate appellate counsel's advocacy, but trial counsel's meaning is clear: notwithstanding Montes's entitlement to overtime under the FLSA, the arbitrators should ignore the dictates of the law. Indeed, as the arbitrators summarized the position of both parties, it is obvious they understood Shearson as urging a disregard for the law. The reason for Shearson's appeal to ignore the law is discernible from the facts of the case.

The factual issue to be resolved by the arbitrators was whether Montes fit within the

---

[8]We do not suggest that an arbitration panel has to state the reasons for its decisions. *See Wilko,* 346 U.S. at 436, 74 S.Ct. at 187 (the "award may be made without explanation of their reasons and without a complete record of their proceedings"); *O.R. Sec.,* 857 F.2d at 747 ("It is well-settled, however, that arbitrators are not required to explain their reasons for an award."). We simply note that there is nothing in the decision itself or anywhere else in the record that refutes the inference that the law was ignored under the circumstances in this case.

description of a "covered" employee under the FLSA, and was thus entitled to overtime pay, or was instead "exempt" by virtue of being "employed in a bona-fide ... administrative ... capacity...." 29 U.S.C. § 213(a)(1). The exemption is further defined by federal regulations. *See* 29 C.F.R. § 541.2.[9]

---

[9]29 C.F.R. 541.2 states:

> The term *employee employed in a bona fide * * * administrative * * * capacity* in section 13(a)(1) of the act shall mean any employee:
>
> (a) Whose primary duty consists of either:
>
> (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or
>
> (2) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and
>
> (b) Who customarily and regularly exercises discretion and independent judgment; and
>
> (c)(1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations of this subpart), or
>
> (2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge, or
>
> (3) Who executes under only general supervision special assignments and tasks; and
>
> (d) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
>
> (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week ($130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, or

Montes argues that she had low-level clerical responsibilities and therefore could not qualify for the administrative exemption from the FLSA.[10] She testified that she acted as a sales assistant, performing "clerical" work, and had no supervisory authority (Arbit.Tr. at 143);[11] that her prior jobs with Shearson, in which she admits she worked as an "operations manager," differed from her present job, in that she exercised significant supervisory authority in those jobs, but not in her

---

(2) Who, in the case of academic administrative personnel, is compensated for services as required by paragraph (e)(1) of this section, or on a salary basis which is at least equal to the entrance salary for teachers in the school system, educational establishment, or institution by which employed: Provided, That an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week ($200 per week if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the performance of work described in paragraph (a) of this section, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all the requirements of this section.

Additionally, according to the applicable regulations, "[i]n the ordinary case, it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. §§ 541.103, 541.206(b). *See generally* 29 C.F.R. § 541.201 et seq.

[10]Montes also asserts that, because she lacked supervisory authority, she additionally does not fit within the "executive" exemption from the FLSA. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.1. In the case at hand, Shearson apparently raised this exemption before the arbitration board and before the district court. We need not address this issue in any depth, however, because if Montes's duties were of the sort she contends, then it follows that she also did not have enough authority to qualify for either the administrative or the executive exemptions.

[11]In relevant part, Montes testified as follows:

In Hallandale, as a sales assistant, my primary duty was clerical in nature. I put in check requests. I made the functions of the everyday running of a sales assistant. I never once supervised. I had no authority over employees. They didn't call me when they were going to be out. I didn't, I couldn't, hire. I couldn't fire. There was no, I wasn't their supervisor. I didn't do anything that a management position would call for.

(Arbit.Tr. at 143).

present Hallandale job (Arbit.Tr. at 98, 143); that before coming to Hallandale, she was a non-exempt employee for Shearson who received no overtime pay, but worked no overtime hours (Arbit.Tr. at 27); and that she was told by branch manager Steve Friedman soon after starting work that she was non-exempt. (Arbit.Tr. at 45).

According to Allan Yarkin, Montes's direct supervisor at the Hallandale branch, Montes was not able to take on a supervisory role in the office. (Arbit.Tr. at 278). Mark Esquenazi, who replaced Friedman as the branch manager, testified that Montes filled out time-cards, and that time-cards were only required of non-exempt employees. (Arbit.Tr. at 384-85). He also testified that, to the best of his knowledge, Montes was listed as a "non-exempt" employee by Shearson. (Arbit.Tr. at 384). Friedman testified that Montes was non-exempt,[12] and that he was not permitted to classify her as an exempt employee. (Arbit.Tr. at 299, 301-02). Montes's name plate identified her as a "Sales Assistant" (R1-30-Ex.C-2), Shearson's employee handbook stated that non-exempt workers who filled out time-cards qualified for overtime pay (R1-30-Exh.C9, 10), and Shearson's internal documents listed Montes as a non-exempt "client sales associate." (R1-30-Exh.R-12).

---

[12]The transcript reads in relevant part:

Q: All right. You testified that you tried to have her classified as exempt because she was a workaholic and you had to pay overtime to non-exempt employees. Right?

A: That's correct.

Q: Was she a non-exempt employee?

A: A non-exempt employee.

Q: The entire time she was there?

A: That's correct.

(Arbit. Tr. at 299).

Finally, according to unchallenged testimony from Robert Chauvin, Montes's expert witness, Montes did not qualify for exemptions from the FLSA. (Arbit.Tr. at 409).

Shearson, on the other hand, asserts that there was sufficient evidence for the arbitration board to rule in Shearson's favor, emphasizing that Montes expected her position to be exempt and that she performed supervisory work. The evidence Shearson presented was that Montes was internally referred to as an "Operations Manager" (R.1-30-Exh.R1), an exempt position, and that she referred to herself as having this title in an internal memo (though in the same memo she also referred to herself as a sales assistant) (R1-30-Ex.R6). Similarly, Montes wrote two internal memos in which she stated that she was responsible for the office staff. (R1-30 Ex.R5, 6).

According to branch manager Friedman, Montes introduced herself to him as the operations manager, and as being in charge of the office staff. (Arbit.Tr. at 338). He also testified that he observed her supervise the staff, and that her work corresponded with the responsibilities of an operations manager. (Arbit.Tr. at 350-54). Montes testified that, before starting work, she thought that her job would be exempt, and that she was led to believe that the position was exempt after accepting her salary. (Arbit.Tr. at 45, 408). Her salary was $42,500, and Montes testified that sales assistants in her previous office had made about $25,000. (Arbit.Tr. at 103-04). According to Yarkin, Montes's direct supervisor, her anticipated job responsibilities included responsibility for the staff (Arbit.Tr. at 276), and Shearson documents state that Montes is "responsible for all operational staff." (R1-30 Ex.R2). According to branch manager Esquenazi, Montes acted as the "operations manager" in her working group. (Arbit.Tr. at 350). In that role, according to Esquenazi, Montes ensured that others on the staff were performing their jobs properly, advised members of the staff regarding how to deal with problems that clients brought to their attention, and oversaw "all ins and outs of money, as well as ins and outs of securities, wire transfers, ... journals, shipping,

[and] delivering [—] similar functions to an operations manager." (Arbit.Tr.350-52).

Melissa Fierman, a worker in the office, testified that Montes supervised her, that Montes determined how to respond to customer complaints, and that Montes was brought in to replace a person who had performed supervisory functions. (Arbit.Tr. at 312-17, 331). Fierman, who replaced Montes, also testified that her supervisory responsibilities took up about fifty percent of her own time. (Arbit.Tr. at 332). She stated that these responsibilities included the power to recommend that someone be fired, that Montes's predecessor had the same power, and that Fierman assumed that Montes also had the same power. (Arbit.Tr. at 325). Additionally, Shearson notes that Montes's time-cards reflected only 40 hours per week, although Shearson conceded that she definitely worked many more hours than that. (Arbit.Tr. at 21). Finally, Shearson discounted the testimony of Chauvin, Montes's expert witness, asserting that he had no familiarity with the securities industry, and that Chauvin was aware that the position of "operations manager" was exempt from the FLSA. (Arbit.Tr. at 196).

No evidence was presented regarding whether Montes's administrative tasks took up at least 50 percent of her time. Shearson argues that the evidence that Montes's successor, Melissa Fierman, spent 50 percent of her time on supervisory matters is a sufficient factual basis from which to imply that Montes also did so. As Fierman's testimony shows, a comparison of the two jobs does not necessarily establish a factual basis from which to conclude that Montes herself had similar responsibilities. To the extent that one does compare the jobs, we note that Fierman testified that she filled out timesheets and that she received overtime pay. (Arbit.Tr. at 16). On the whole, the evidence did not show that Montes's primary duties consisted of work directly related to management policies or general business operations and required the exercise of discretion and independent judgment. At most, the evidence only showed that Montes performed some of this kind

of work; it did not show that these duties were her primary duties as required by the FLSA.

Accordingly, in light of the express urging to deliberately disregard the law, the lack of support in the facts for the ruling and the absence in the decision, or otherwise in the record, indicating that the arbitrators rejected Shearson's plea to manifestly disregard the law, we REVERSE the district court's affirmance of the arbitration board's award, and REMAND the case to the district court with instructions to refer the matter to a new arbitration panel.

CARNES, Circuit Judge, concurring specially:

I concur in Judge Barkett's fine opinion and write separately only to emphasize how narrowly the decision in this case is limited to the unusual facts presented. Those facts are that: 1) the party who obtained the favorable award had conceded to the arbitration panel that its position was not supported by the law, which required a different result, and had urged the panel not to follow the law; 2) that blatant appeal to disregard the law was explicitly noted in the arbitration panel's award; 3) neither in the award itself nor anywhere else in the record is there any indication that the panel disapproved or rejected the suggestion that it rule contrary to law; and 4)the evidence to support the award is at best marginal. The Court does not imply that it would find a manifest disregard of the law based on anything less than all of those factors. For example, the fact that an attorney misstated the law to the arbitration panel, as attorneys sometimes do, even if there was only weak evidence to support the award, will not justify a conclusion that the award resulted from a manifest disregard of the law.