In the Matter of the Arbitration between
HUNTER, KEITH INDUSTRIES,
INC., Respondent,

v.

PIPER CAPITAL MANAGEMENT
INCORPORATED, et al.,
Appellants.

No. C3–97–1796.

Court of Appeals of Minnesota.

March 17, 1998.

Lewis A. Remele, Jr., Christopher R. Morris, Jeffer Ali, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent.

George F. McGunnigle, Lawrence J. Field, Catherine A. McEnroe, Leonard, Street & Deinard, Minneapolis, for appellants.

Considered and decided by LANSING, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

Piper Capital Management Incorporated and Piper Jaffray, Inc. (Piper), appeal from a judgment confirming an arbitration award of $1,000,000 in punitive damages. The punitive damages were awarded in a National Association of Securities Dealers (NASD) arbitration commenced by Hunter, Keith Industries, Inc. (Hunter, Keith). We reject Piper's argument that the punitive damages were awarded in manifest disregard of the law or in violation of public policy.

## FACTS

Hunter, Keith appointed Piper as investment manager for its qualified ERISA profit sharing plan. The plan covered Andrew Hunter, owner and chairman of the board, and Robert Keith, president. The plan was funded solely through contributions from the corporation that were allocated to separate sub-accounts maintained for Hunter and Keith. Hunter and Keith could direct the investment of their accounts to several investment funds managed by Piper. When Hunter, Keith transferred the plan's assets to Piper, each sub-account had a market value of $1,254,679. Piper served as the plan's investment manager from January 1992 until April 1995.

Under the Investment Management Contract, the parties agreed that all controversies "shall be determined by arbitration to the fullest extent provided by law." In July 1995, Hunter, Keith initiated a NASD arbitration action against Piper on behalf of the two participants. The complaint alleged that Piper was a fiduciary under a plan governed by the Employee Retirement Income Security Act (ERISA) and that it breached its fiduciary duties, causing the Hunter, Keith plan to lose hundreds of thousands of dollars. The complaint also alleged breach of contract, fraud, negligence, and violations of state and federal securities laws. Both parties signed submission agreements in which they agreed to arbitrate under the NASD rules and "to abide by and perform any awards" rendered under the agreement. After an eight-day arbitration in the summer of 1996, arbitrators ordered Piper to pay $303,-724 in compensatory damages, $170,000 in attorneys' fees, and $1,000,000 in punitive damages "pursuant to the authorities submitted including state law, federal law, and ERISA statues."

After receiving the order, Hunter, Keith sent a letter to NASD requesting clarification of the compensatory damages award. The next day, Piper sent a responsive letter to NASD. Piper's response also asked the panel to clarify the authority for its punitive damages award and argued that ERISA prohibits punitive damages. Hunter, Keith sent a second letter to NASD responding to Piper's letter. Six weeks later, NASD's staff attorney sent a letter confirming the amount of the compensatory damage award but declining to comment on the punitive damage award or any other aspect of the award. Piper paid the compensatory damages and attorneys' fees but refused to pay the punitive damages award.

Hunter, Keith filed a motion to confirm the award in state district court. Piper attempted to remove the state court action to federal court, commenced a separate federal action seeking to vacate the award, and filed a conditional motion to vacate the state court action. On motion by Hunter, Keith, the federal court dismissed the federal court action for lack of federal jurisdiction and remanded the state court action. Hunter, Keith then filed a second motion in state district court to confirm the award, and Piper filed an opposing memorandum. The district court granted Hunter, Keith's motion to confirm the award. Piper appeals that decision.

## ISSUES

Did Piper waive the right to appeal the punitive damages award?

Is manifest disregard of the law a basis for overturning an arbitration award in Minnesota?

Should this court exercise its discretion to award attorneys' fees to Hunter, Keith under Minn. R. Civ.App. P. 138?

## ANALYSIS

### I

■ Whether Piper waived the right to appeal this arbitration award is a question of law, which we review de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Hunter, Keith raises four arguments to support its claim that Piper waived its right to review. First, Hunter, Keith argues that Piper waived all right to judicial review by including an arbitration clause in its standard investment management contract. We find no language in the contract that could be interpreted as a waiver, and imputing waiver because Piper required an arbitration clause in the management contract would contradict the specific grounds for appeal set forth in

Minn.Stat. § 572.19, subd. 1 (1996) (listing bases on which court may vacate arbitration award).

Second, Hunter, Keith argues that Piper's appellate challenge is impermissible because Piper failed to move in state court to vacate the award under Minn.Stat. § 572.19. Piper properly moved to vacate the award when the Hunter, Keith action was removed to federal court. In remanding the action to the state district court, the federal court also remanded Piper's pending motion to vacate. *Doerr v. Warner*, 247 Minn. 98, 105–06, 76 N.W.2d 505, 510 (1956).

Third, Hunter, Keith contends that Piper waived its right to oppose the arbitrators' punitive damages award by failing to make a timely request for correction or modification under Minn.Stat. § 572.16, subd. 1 (1996). We reject this argument because Piper properly moved to vacate the award, and its failure to apply for modification or correction does not preclude this appeal. *See* Minn. Stat. § 572.18 (1996) ("the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating *or* modifying or correcting the award") (emphasis added.)

■ Hunter, Keith's final procedural argument is more significant. It is a close question whether Piper waived the ERISA defenses it now asserts by failing to raise them during the arbitration proceeding. Under the NASD Code of Arbitration Procedure (NASD Code), which governed the proceeding, the respondent's answer "shall specify all available defenses and relevant facts thereto that will be relied upon at the hearing[.]" NASD Code 25(b)(1). A respondent who "fails to specify all available defenses and relevant facts" in the answer may "upon objection by a party, in the discretion of arbitrators, be barred from presenting such facts or defenses." *Id.* at 25(b)(2)ii. Until arbitrators render an award, they have the discretion to reopen the hearings upon application by one of the parties. *Id.* at 40. Unless applicable law provides otherwise, arbitration awards are not subject to review or appeal. *Id.* at 41(b).

Piper did not address ERISA's preemption and remedy provisions in its answer to the complaint. Piper argues the panel was aware of these provisions because Hunter, Keith tried the matter "largely as an ERISA case," but we have no transcript of the arbitration that would allow us to determine whether this is an accurate characterization of the proceedings. On this record, whether Piper properly raised its ERISA defense during the arbitration proceeding turns, in large part, on the effect of its post-award letter to NASD's staff attorney.

■ As a general rule, post-award communications to arbitrators have no effect. Once arbitrators render an award, parties may seek judicial review under the Minnesota Arbitration Act or the Federal Arbitration Act, but they cannot petition the arbitration panel. *See id.* (arbitration awards are not subject to appeal unless applicable law provides otherwise); *see also* 9 U.S.C. §§ 10, 11 (1996) (grounds for vacating, modifying or correcting an award under the federal act); Minn. Stat. §§ 572.19, 572.20 (1996) (grounds for vacating, modifying or correcting an award under the Minnesota act).

The post-hearing exchange between Hunter, Keith and Piper was conducted without objection by either party, and each addressed substantive issues on the computation of damages. Hunter, Keith sent the first post-hearing letter to NASD's staff attorney on August 27, 1996, asking NASD to "clarify" its compensatory damage award. In responding to Hunter, Keith's letter on August 28, 1996, Piper explained its position on the compensatory damage award and asked the panel to clarify the authority for its punitive damages award. Piper outlined its position that ERISA prohibits punitive damages and questioned "whether any of the [p]anel's articulated bases can support such an award."

Instead of contesting the procedural effect of Piper's letter, Hunter, Keith wrote a second letter on August 29, 1996, to the NASD staff attorney. Hunter, Keith responded to Piper's August 28 letter on the merits, arguing that federal circuits are split on the issue of punitive damage awards under ERISA. The absence of any procedural objections to the substantive exchange on the calculation of damages incorporates this issue into the proceedings. *See Brzowski v. Md. Home Improvement*, 114 Md.App. 615, 691 A.2d

699, 710 (1997) (losing party waived its right to contest effect of prevailing party's post-hearing letter to arbitrator because losing party responded to letter without raising its procedural objections), *cert. denied* 346 Md. 238, 695 A.2d 1227 (1997).

## II

A judicial appeal from an arbitration decision is subject to an extremely narrow standard of review. *State, Office of State Auditor v. Minnesota Ass'n of Prof'l Employees,* 504 N.W.2d 751, 754 (Minn.1993). A court may vacate an arbitration award only upon proof of one or more of the grounds stated in Minn.Stat. § 572.19. *AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.,* 356 N.W.2d 295, 299–300 (Minn.1984). The Minnesota Arbitration Act provides that upon application by a party, the court shall vacate an award when the award is procured by corruption, fraud, or other undue means; there was prejudicial misconduct or corruption by the arbitrator or evident partiality of the neutral; substantial prejudice occurred through improper conduct of the hearing; or there was no arbitration agreement. Minn. Stat. § 572.19, subd. 1.

The fact that a court could not or would not grant a particular form of relief is not grounds for vacating or refusing to confirm an arbitration award. *Id.* The arbitrator "is the final judge of both law and fact," and the award "will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or other disregard of duty." *Cournoyer v. American Television & Radio Co.,* 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957). A court may vacate an arbitration award only when "it is established that arbitrators have clearly exceeded their powers[.]" *State Office of State Auditor,* 504 N.W.2d at 754 (citing *State v. Berthiaume,* 259 N.W.2d 904, 910 (Minn.1977)). This court must exercise "every reasonable presumption" in favor of the award's finality and validity. *Id.* (citing *National Indem. Co. v. Farm Bureau Mut. Ins. Co.,* 348 N.W.2d 748, 750 (Minn.1984)). The grounds for vacating an arbitration award under the Federal Arbitration Act are similar to those under the Minnesota act. *See* 9 U.S.C. § 10 (grounds for vacating).

In the district court, Piper opposed Hunter, Keith's motion to confirm the arbitration award on the grounds that ERISA preempts Hunter, Keith's state law claims and ERISA does not allow punitive damages. The district court confirmed the arbitration panel's award, reasoning that the punitive damages were awarded pursuant to a private arbitration agreement and the terms of that agreement made it unnecessary to determine whether ERISA preempted state law and excluded punitive damages. The district court's rationale was drawn from *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60–62, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995). In *Mastrobuono,* the arbitration panel awarded compensatory and punitive damages for mismanagement of brokerage accounts. *Id.* at 54, 115 S.Ct. at 1215. The federal district court, relying on the client agreement's choice-of-law provisions, applied New York law prohibiting punitive damages in arbitrations and struck the award. *Id.* The Court of Appeals for the Seventh Circuit affirmed. *Id.*The Supreme Court reversed, observing that NASD's Code of Arbitration Procedure allows arbitrators to award "damages and other relief." *Id.* at 60–61, 115 S.Ct. at 1218. The Court found additional support in NASD's manual for arbitrators, which stated that "[p]arties to arbitration are informed that arbitrators can consider punitive damages as a remedy." *Id.* (quoting NASD Arbitrators Manual (citation omitted)).

As in *Mastrobuono,* Piper's arbitration clause begins with a choice-of-law provision choosing Minnesota law, and that provision is followed by an agreement to arbitrate under NASD or New York Stock Exchange arbitration rules. The district court interpreted this clause to mean that Minnesota law governed the arbitration. The court then noted that Minnesota law authorizes punitive damages and confirmed the award.

We disagree with the district court's determination that Minnesota law governs the entire arbitration. As in *Mastrobuono,* we read the choice-of-law provision to govern the rights and duties of the parties, while the arbitration clause covers the arbitration. 514 U.S. at 63–64, 115 S.Ct. at 1219. Thus, the

proper basis for the punitive damage award stems from the parties' agreement to resolve all disputes under the contract according to NASD rules, not Minn.Stat. § 549.20, subd. 1(a), and (2). *See Mastrobuono,* 514 U.S. at 62, 115 S.Ct. at 1218. But because *Mastrobuono* held that punitive damages were enforceable within the scope of the arbitration contract even though New York law would not have allowed punitive damages, the district court's reference to Minnesota punitive damages law is not significant. In this appeal Piper does not directly rely on a choice-of-law argument, but argues instead that the arbitration panel's disregard of ERISA's preemptive scope constituted a manifest disregard of the law.

 Manifest disregard of the law, a doctrine that provides a narrow basis for vacating an arbitration award, has been recognized by a number of state and federal courts. *See Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), *overruled on other grounds Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (unlike an arbitrator's legal interpretations, an arbitrator's decision rendered in "manifest disregard" of the law is subject to judicial review for error in federal courts). Federal courts describe manifest disregard of the law as a situation in which an arbitrator commits an error that is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Marshall v. Green Giant Co.,* 942 F.2d 539, 550 (8th Cir.1991) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986)). The term "disregard" means the arbitrator "appreciates the existence of a clearly governing legal principle" but chooses to ignore it. *Id.* The record, other than the result, must show the arbitrators knew the law and expressly disregarded it. *Id.* "Manifest disregard" involves more than an error or misunderstanding of law. *Id.*

Most federal circuits have expressly recognized the manifest disregard doctrine. *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1461–62 (11th Cir.1997); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997); *DiRussa*

*v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir.1997); *M & C Corp. v. Erwin Behr GmbH & Co., KG,* 87 F.3d 844, 850–51 (6th Cir.1996); *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1463 (10th Cir.1995); *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th Cir.1995); *Remmey v. PaineWebber, Inc.* 32 F.3d 143, 149 (4th Cir.1994); *Advest, Inc. v. McCarthy,* 914 F.2d 6, 9–10 (1st Cir.1990). *But see Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir.1994) (doctrine is "superfluous and confusing"); *R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534, 539–40 (5th Cir.1992) (judicial review of arbitration awards is limited to errors specified in Section 10). A number of state courts have also recognized the manifest disregard doctrine. *Geissler v. Sanem,* 949 P.2d 234, 237 (Mont. 1997) (adopting manifest disregard and citing nine other states that have adopted the doctrine) (citations omitted).

Piper contends this court should apply the doctrine of manifest disregard for the law because Hunter, Keith moved to confirm the punitive damages award under the Federal Arbitration Act as well as the Minnesota Act. We disagree. Although Minnesota courts have followed federal precedent in construing section 572.19 of the Minnesota Act, *Egan & Sons Co. v. Mears Park Dev. Co.,* 414 N.W.2d 785, 786 (Minn.App.1987), *review denied* (Minn. Jan. 20, 1988), the Eighth Circuit has not used manifest disregard of the law as a basis for overturning arbitration awards. *Card v. Stratton Oakmont, Inc.,* 933 F.Supp. 806, 811 (D.Minn.1996) (recognizing but declining to adopt doctrine); *Marshall,* 942 F.2d at 539 (8th Cir.1991) (same); *Stroh Container Co. v. Delphi Indus., Inc.* 783 F.2d 743, 749 (8th Cir.1986) (same). *See also DVC–JPW Investors v. Gershman,* 5 F.3d 1172, 1174 (8th Cir.1993) (district court may vacate an arbitrator's award only under the narrow circumstances in the Federal Arbitration Act); *Mandich v. Watters,* 970 F.2d 462, 466 (8th Cir.1992) (Minnesota law favors arbitration awards and by statute severely limits the grounds upon which a reviewing court may vacate an award).

We also view as significant the fact that very few of the federal circuit courts that

have recognized the manifest disregard doctrine have vacated an arbitration award on that basis. *See Montes,* 128 F.3d at 1461–62 (manifest disregard of law is valid basis for vacating decision when arbitrators were told to disregard the Fair Labor Standards Act); *DeGaetano v. Smith Barney, Inc.,* 983 F.Supp. 459, 463 (S.D.N.Y. 1997) (when parties clearly presented standards for awarding attorneys' fees and punitive damages, arbitrators displayed manifest disregard of the law by basing attorneys' fees on the standard for punitive damages).

Separate from the question of whether Minnesota should recognize the manifest disregard doctrine is whether Piper has in this action demonstrated that the arbitration panel intentionally disregarded the law. Unlike the facts in *Montes* and *DeGaetano,* we find little evidence to support Piper's claim that the arbitration panel knew the applicable law but chose to disregard it. *See Montes,* 128 F.3d at 1462; *DeGaetano,* 983 F.Supp. at 463. We have not been provided with a transcript of the arbitration hearing. *See Pyle v. Securities U.S.A., Inc.,* 758 F.Supp. 638, 640 (D.Colo.1991) (court cannot decide whether arbitrator displayed manifest disregard of the law because the parties did not provide a transcript of the proceeding). The record does not establish that Piper specifically referred to its ERISA preemption defense before or during the eight-day arbitration hearing. To accept Piper's argument that Hunter, Keith's trying this matter as an ERISA case provides the necessary proof would be to not only conclude that plaintiff's assertion of a claim injects all possible defenses into the record, but would also impute the knowledge of these defenses to the arbitrators. Based on the record before us, we find no persuasive evidence that during the arbitration proceeding the arbitration panel manifestly disregarded the law by deciding to impose punitive damages.

■ In the alternative, Piper asks us to evaluate whether the arbitration panel manifestly disregarded the law when it did not respond to Piper's legal arguments in its post-award letter to NASD. Even though we agree that the letter may be considered as raising the ERISA defense to punitive damages, the letter does not prove the panel *knew* the law and consciously disregarded it.

Hunter, Keith's response to Piper's letter suggests that some federal circuits have allowed punitive damages under ERISA. Thus, the panel was not presented with a clearly governing legal principle but, rather, a split of authority on the issue. Hunter, Keith's letter also argues that punitive damages are "clearly recoverable" under Minnesota law when common law fraud and breaches of fiduciary duty occur. We recognize that ERISA's preemption provision is conspicuously broad. *See* ERISA § 514(a), 29 U.S.C. § 1144(a) (1996) (providing that ERISA supersedes any state law that may relate to employee benefit plan); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). We also recognize that state regulations that constitute a traditional exercise of state authority, such as securities laws, may not be preempted. *See Du Buono v. NYSA–ILA Med. and Clinical Services Fund,* — U.S. —, —, 117 S.Ct. 1747, 1753, 138 L.Ed.2d 21 (1997) (holding that ERISA does not preempt New York's inherent police power to impose gross-receipts tax on ERISA-funded medical center). The point is not to finally determine whether punitive damages are or are not allowable under Hunter, Keith's claims, but to recognize the complexity of the legal analysis on an issue that was not fully presented to the arbitrators.

■ Taken as a whole, the only evidence that arbitrators may have disregarded the law stems from the award itself. Under *Marshall,* the record, *other than the result,* must show arbitrators knew the law and expressly disregarded it. 942 F.2d at 550. At worst, the arbitrators may have misinterpreted ERISA's highly complex preemption and remedies provisions by awarding punitive damages to individual plan beneficiaries. *See Varity Corp. v. Howe,* 516 U.S. 489, 508–10, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996); *Mertens v. Hewitt Associates,* 508 U.S. 248, 255–58, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). But this mistake does not meet the standard set forth in *Marshall.* 942 F.2d at 550 (error must be "obvious and capable of being readily and instantly perceived by the average

person qualified to serve as an arbitrator"). An arbitration panel that incorrectly interpreted the law has not manifestly disregarded it; it has simply made a legal mistake. *Montes,* 128 F.3d at 1462. "To manifestly disregard the law, one must be conscious of the law and deliberately ignore it." *Id.*

 Piper also urges this court to overturn the punitive damages award on the basis of the public policy exception recognized by federal courts. *See, e.g., W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Minnesota courts have not formally adopted the public policy exception, and the facts in this case do not provide an appropriate basis for vacating the arbitrators' punitive damages award on public policy grounds. *See, e.g., State, Office of State Auditor,* 504 N.W.2d at 756–57. In declining to overturn the arbitration award in *State Auditor,* the supreme court emphasized the significant principles underlying arbitration—that an award may not be overturned because of a mistake in law or because a court disagrees with an arbitration decision on the merits. *Id.,* 504 N.W.2d at 754–55. In the absence of an agreement limiting an arbitrator's authority, the arbitrator is the final judge of both fact and law, including the interpretation of terms of a contract. *Id.*

### III

Hunter, Keith contends Piper's vigorous efforts to vacate the award have deprived it of the benefit of the arbitration agreement while delaying payment of the $1,000,000 punitive damage award. Hunter, Keith asks this court to award attorneys' fees under rule 138, which provides:

> If an appeal delays proceedings on the judgment of the trial court and appears to have been merely for delay, the appellate court may award just damages and single or double costs to the respondent.

Minn. R. Civ.App. P. 138. We believe Piper raised a number of significant issues on appeal, particularly given the size of the award and the complexity of the underlying law. Hunter, Keith's request for attorneys' fees is therefore denied.

## DECISION

The arbitration panel did not manifestly disregard the law or violate public policy by awarding punitive damages in an arbitration involving Piper's mismanagement of Hunter, Keith's qualified ERISA profit-sharing plan. We affirm the district court's confirmation of the arbitration award but deny Hunter, Keith's request for attorneys' fees.

**Affirmed.**