Richard **CUNNINGHAM, Plaintiff,**

v.

**PFIZER INC., Defendant.**

No. **6:03–cv–1197–Orl–18DAB.**

United States District Court,
M.D. Florida.
Orlando Division.

Dec. 10, 2003.

Frank W. Kenniasty, Melbourne, FL, for Plaintiff.

James Michael McRae, Holland & Knight, LLP, Orlando, FL, James P. Flynn, Michael J. Thompson, Epstein, Becker & Green, P.C., Newark, NJ, for Defendant.

G. KENDALL SHARP, Senior District Judge.

THIS CAUSE comes before the Court on Plaintiff Richard Cunningham's motion to confirm an arbitration award (Doc. 2, filed 20 August 2003) and memorandum of law in support thereof (Doc. 8, filed 2 September 2003) and Defendant Pfizer's Motion to vacate the arbitration award and memorandum in support thereof (Doc. 18, filed 24 September 2003).

## I. BACKGROUND

After the Warner–Lambert Company's merger into Pfizer ("Defendant"), Defendant eliminated Richard Cunningham's ("Plaintiff") job as a TDR Supervisor and, given the choice between a new job and a benefits package pursuant to the Warner–Lambert Company Enhanced Severance Package ("ESP"), Plaintiff chose the new job of Broker Manager ("BM"). In January 2001, Plaintiff's supervisor, Ms. Leigh, a Director of Retail Operations, told Plaintiff that his position would change to Field Operations Manager ("FOM") and that FOMs would have duties different from those of BMs. Plaintiff followed Ms. Leigh's directions and performed the duties she said were now his as a FOM. Approximately three weeks later, the Adams Sales Leadership Team informed Plaintiff that he should not perform the new duties announced by Ms. Leigh and should revert to performing only his previous duties as a BM.

In mid–2001, Plaintiff filed for ESP benefits for constructive termination. The ESP states that "[u]pon the occurrence of an Activation Event with respect to a Participant," certain benefits shall be due to Participant. (Doc. 18, Exhibit A at § 5.) The term "Activation Event" includes "an involuntary termination of such Participant's employment with the Company, either actual termination or Constructive Termination." (*Id.* at § 4.) Constructive termination is defined in Section 20.1 of the ESP to include a "substantive change in job duties." (*Id.* at § 20.1(iv)). Plaintiff believed that both his transition from a TDR Supervisor position to a BM position in 2000, and his transition from a BM to a FOM at the direction of Ms. Leigh, constituted a substantive change, and that both were therefore constructive terminations meriting ESP benefits.

Defendant denied Plaintiff's claims through several internal appeals and when Plaintiff demanded arbitration of the dispute in accordance with procedure set out in 20.3 of the ESP, the American Arbitration Association certified his case for Panel Review. The Panel, after a two day hearing in May, issued an award letter on 25 June 2003. It found Plaintiff's claim regarding his transition from TDR Supervisor to BM time barred. The Panel, however, found his second claim for constructive termination valid: "The evidence supports that the job of Field Operations Manager was substantively different than the job of Broker Manager." (Doc. 18, Exhibit M.) Plaintiff seeks confirmation of this decision and award; Defendant seeks vacatur.

## II. DISCUSSION

### A. General Standards

The party seeking vacatur has the burden to overcome the strong presumption under the Federal Arbitration Act ("FAA") that the arbitration award should stand. 9 U.S.C. § 9 (2001 & Supp. 2003); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir.2002). A court reviewing an arbitration decision does not review the issues submitted to arbitrators *de novo*. Instead, courts review awards pursuant to standards in the FAA and case law in order to determine whether to vacate.

Defendant argues that the award should be vacated because the Panel arbitrators exceeded their authority and because the award was in manifest disregard of the law. The FAA sets forth limited circumstances that merit vacating a covered arbitration award, including "where the arbitrators exceeded their powers, or so imperfectly executed them

**1332**

that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Eleventh Circuit has recognized three non-statutory bases for vacating arbitration decisions, including that the decision was made in manifest disregard of the law. *Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d 1456, 1458–59 (11th Cir.1997). The Court addresses each of Defendant's bases for vacatur in turn.

### B. 9 U.S.C. § 10(a)(4)

■ Defendant advances three arguments in support of its position that the Court should vacate the Panel's award under Section 10(a)(4) because the Panel exceeded its authority in ruling that defendant constructively discharged plaintiff. First, Defendant argues that the Panel exceeded its authority under the ESP by deciding an issue "not committed to [arbitration] by the ESP." (Doc. 18 at 9.) Defendant states that the Panel only had the authority to determine whether Plaintiff experienced an "actual substantive change in job duties pursuant to Section 20.1(iv) of the ESP and as defined in the Q & As." (*Id.*) Defendant argues that instead of addressing that issue as it was presented to them, the Panel incorrectly considered itself authorized to determine whether Plaintiff's experience "somehow constituted a constructive termination under [the Panel's] own interpretation of the term." (*Id.* at 9–10.)

■ Arbitrators' authority is primarily derived from the "provisions of the arbitration agreement under which the arbitrators were appointed." *Szuts v. Dean Witter Reynolds, Inc.* 931 F.2d 830, 831

(11th Cir.1991). "[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, [however, courts] must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir.1980);[1] *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1264 (11th Cir.1996). In order to determine whether the Panel acted in excess of its authority when it made its award, the Court thus looks to both the ESP in general and to the specific issue that the parties submitted to the Panel.

Section 20.3 of the ESP states that "All disputed [sic] regarding the application of this Section 20 shall be submitted to an Arbitration Panel whose findings shall be binding on the Company and the Participant." (Doc. 18, Exh. A.) There is no question that the parties here disputed the application of Section 20 of the ESP, which defines constructive termination. Defendants have not submitted the letter certifying for arbitration Plaintiff's claim for ESP benefits, or Plaintiff's demand letter or anything similar, so the Court cannot be sure what precise question was submitted to the arbitrators once the parties moved into arbitration. The letters traded by the parties throughout this dispute, however, along with the rest of the record, do indicate that Plaintiff's claim was styled as one for constructive termination because of a substantive change in duties. (Doc. 18, Exhibits G—M). The Panel's award letter describes the claim as one of constructive

---

1. Decisions of the former Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v.* *City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981).

termination and explicitly states that the Panel found Plaintiff experienced a substantive change in job duties, specifically referring to the substantive change portion of Section 20 of the ESP. (*Id.* Exh. M.)

The Court is at a loss to imagine how the Panel's decision could be any more tailored to its authority as outlined in the ESP and the case before the Panel, and, indeed, as described in Defendant's brief. There is no suggestion that the Panel considered itself authorized to, or did, dream up its own definition of constructive termination as Defendant charges. The Court finds no merit in the argument that the Panel addressed a question not submitted to them. Accordingly, the Court finds that the Panel did not exceed its authority under 9 U.S.C. § 10(a)(4) by deciding a question not within its authority.

Second, Defendant argues that the Court should overturn the Panel's award based on Section 10(a)(4) because the Panel "contravened the very terms of . . . the ESP because it awarded benefits to Plaintiff based upon very temporary, unapproved, and never officially implemented 'change' in job duties, not an actual change in job duties as required by the ESP." (Doc. 18 at 9.) In support of this argument,

Defendant devotes considerable space to a recitation of its version of the facts and its version of the whether the facts amount to a finding of "substantive change," stressing the temporary and unapproved nature of the changes in Plaintiff's duties in 2001. In other words, Defendant argues that the Panel misinterpreted the definition of constructive termination in Section 20 of the ESP when it found that a temporary change approved by only Plaintiff's supervisor was a change in job duties and one that was substantive enough to fall into the definition of constructive termination in Section 20.1. (*Id.* at 9–10.)

■■ Defendant has improperly asked the Court to reconsider findings of fact and interpretation in this case. Section 10(a)(4) of the FAA "does not allow an arbitration award to be vacated solely on the basis of error of law or interpretation but requires something more, such as misconduct pertaining to the proceedings on the part of the arbitrators or the parties." *Robbins v. Day,* 954 F.2d 679, 683 (11th Cir.1992) (citations omitted). This argument by Defendant about contravening the terms of the ESP raises no issue of lack of authority or misconduct under Section 10(a)(4).[2]

---

**2.** Again, the Court does not wish to engage in a review of the Panel's findings or its interpretation of the ESP. It will pause, however, to note that, in its brief, Defendant misleadingly omits key terms of the definition of constructive termination when it quotes the ESP. In the context of its argument that the Panel misinterpreted the ESP, Defendant urges that the ESP "indicates that a 'change' which is effective for less than four weeks does not create a constructive termination," and that the ESP "expressly require[s] an employee to remain in a position for more than three (3) weeks" in order for a constructive termination to have taken place. (Doc. 18 at 4, 13.) Elsewhere Defendant states that "the ESP itself plainly establishes a minimum

period of four weeks necessary to trigger benefits. . . ." (*Id.* at 12.) In support of these claims, Defendant quotes the ESP as follows: "the term 'Constructive Discharge' *shall include* . . . (v) a job assignment which would require absence from Participant's then principal place of employment for more than four (4) consecutive weeks. . . ." (Doc. 18 at 4, emphasis added.) The ESP actually says "the term 'Constructive Discharge' *shall include, but shall not be limited to,* any of the following . . . (iv) a substantive change in job duties, (v) a job assignment which would require absence from the Participant's then principal place of business for more than four (4) consecutive weeks. . . ." (Doc. 18, Exh. A at § 20.1, emphasis added.)

Third, Defendant urges, actually in the context of its second argument, that the Panel's decision was inconsistent with the ESP drafters' intent. (*Id.* at 10–16.) Again, conclusions about the apparent intent of the drafters, however they bear on a correct interpretation of the ESP, are not relevant to the inquiry at hand: whether the Panel was acting within its authority. Fourth and finally, Defendant argues that the Panel based its decision on evidence that was not credible. (*Id.* at 17). This is a classic example of an argument a court reviewing an arbitration award may not entertain pursuant to Section 10(a)(4) of the FAA.

Defendant has not presented any convincing argument that the Panel exceeded its authority such that vacatur would be justified under Section 10(a)(4) of the FAA.

### C. Manifest Disregard of the Law

 The second basis Defendant urges for vacatur is that the Panel manifestly disregarded the law. This rationale is reserved for very rare circumstances when the record reveals that arbitrators are "conscious of the law and deliberately ignore it." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir.2000). "Manifest disregard" must not be confused with misinterpretation, misstatement or misapplication. *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1460–62 (11th Cir.1997). In this portion of its brief, Defendant merely reiterates its belief that the Panel did not sufficiently weigh Defendant's interpretation of the intent of the ESP drafters and that the Panel was incorrect in finding that the evidence comported with Plaintiff's view of that intent and his view of the terms of the ESP. (Doc. 18 at 19–20.) Defendant points to nothing in the record, and the Court finds nothing, to indicate that the Panel deliberately ignored any law. The Court will not vacate the award on this basis.

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows:

It is **ORDERED AND ADJUDGED** that

1. Plaintiff's motion to confirm the arbitration award (Doc. 2, filed 20 August 2003) is **GRANTED**;

2. Defendant's motion to vacate the arbitration award (Doc. 18, filed 24 September 2003) is **DENIED**;

3. The Clerk's Office is directed to close this case.