B.F. KELLEY, Jr., Individually and as Trustee under the Will of Ben F. Kelley, deceased; Mildred L. Kelley, Plaintiffs–Appellees,

v.

William B. MICHAELS, Defendant–Appellant,

and

PaineWebber, Inc.; Liberty Bank & Trust Company of Tulsa, N.A., in its capacity as Trustee of the Trust of Allene H. Michaels, deceased, Defendants.

No. 94–5023.

United States Court of Appeals, Tenth Circuit.

July 10, 1995.

Wohlgemuth, Tulsa, OK, with him, on the briefs), for defendant-appellant.

Timothy A. Carney (James M. Sturdivant, also of Gable & Gotwals, Tulsa, OK, with him, on the brief), for plaintiffs-appellees.

Before BALDOCK and LOGAN, Circuit Judges.[*]

LOGAN, Circuit Judge.

Defendant William B. Michaels appeals from the district court's judgment confirming an arbitration award. The arbitration panel awarded plaintiffs B.F. Kelley, Jr. and Mildred Kelley, and the B.F. Kelley Trust (for which B.F. Kelley, Jr. acted as trustee) (collectively the Kelleys) $292,750.00 actual and $505,217.50 punitive damages against Michaels and $20,212.84 actual and $50,000.00 punitive damages against PaineWebber, Inc. The award also provided for a setoff in favor of Michaels based on an earlier settlement between the Kelleys and Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) and made other monetary awards not at issue here.[1]

Michaels argues that (1) the arbitration panel exceeded its authority because the Kelleys never asked for punitive damages based on Michaels' conduct while at Merrill Lynch, (2) the punitive damages award was contrary to the parties' designation that New York law governed the resolution of any conflicts, and (3) in any event the punitive damages award was excessive and violated due process.

I

In October 1988, the Kelleys placed significant amounts of money and the corpus of a trust for which B.F. Kelley was the trustee in two accounts with Michaels, then a broker with PaineWebber. They executed Resource Management Account Agreements for each

William W. O'Connor (Joel L. Wohlgemuth and John E. Dowdell, also of Norman &

William W. O'Connor (Joel L. Wohlgemuth and John E. Dowdell, also of Norman &

[*] The late Honorable Juan G. Burciaga, United States District Judge, United States District Court for the District of New Mexico, sitting by designation, heard oral argument in this case but did not participate in the final decision.

1. The award provided for a setoff of $290,000 in favor of Michaels, attributable to the Kelleys' settlement with Merrill Lynch, made a cost award in favor of the Kelleys, and partially granted the Kelleys' attorney's fee request against PaineWebber. The award made some distinctions between damages to the trust accounts and the joint tenant accounts. The arbitrators awarded Michaels $5217.50 on his counterclaim against the Kelleys for his costs of defending two court actions initiated by the Kelleys.

account, which included the following language:

12. This agreement and its enforcement shall be construed and governed by the laws of the State of New York.

. . . . .

15. I agree, and by carrying any account(s) for me you agree, that all controversies which may arise between you and me (including your employees, agents, affiliates, subsidiaries, and correspondents) concerning any transactions in any account(s) in my name or in which I have a beneficial interest or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate, the Chicago Board Options Exchange or National Futures Association, as I may elect.

App. 17, 24. Michaels made investment decisions regarding these accounts and earned commissions on the transactions.

In October 1989, Michaels joined Merrill Lynch, and moved the Kelleys' accounts to Merrill Lynch. The Kelleys signed Customer Agreements with Merrill Lynch containing the following language:

11. Arbitration is final and binding on the parties.

.The parties are waiving their right to seek remedies in court, including the right to jury trial.

.Pre-arbitration discovery is generally more limited than and different from court proceedings.

.The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

.The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted only before the New York Stock Exchange, Inc., the American Stock Exchange, Inc., or arbitration facility provided by any other exchange, the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board, and in accordance with its arbitration rules then in force.

. . . . .

12. This Agreement, with respect to all portions of the CMA Service, including interest charges on loans you may make to me, will be governed by and interpreted under the laws of the State of New York. The terms of my agreement with MLB & T, including those relating to the issuance of the Card, are governed by Federal and New Jersey law. The terms of my agreement with MLNF, including those relating to finance charges, are governed by Federal law and, except to the extent my state law explicitly applies, Utah law. The terms of my agreement with Bank One are governed by Ohio law.

Supp.App. tabs 4 and 5. Michaels continued as the broker for the Kelleys' two accounts through mid–1991.

In August 1991, while Michaels was affiliated with Merrill Lynch, the Kelleys' attorney sent him a demand letter alleging portfolio losses as a consequence of churning, unauthorized trading, and unsuitable investments, as well as unnecessary liquidating commissions when the PaineWebber accounts were closed. The Kelleys reached a confidential settlement with Merrill Lynch for $290,000; the agreement specifically excepted any claims they might have against Michaels.

The Kelleys filed a suit against Michaels in Oklahoma state court which apparently included allegations of stockbroker fraud and federal securities violations. After Michaels

removed that action to federal court, the Kelleys dismissed it without prejudice, and filed a second state action omitting the federal securities allegations. When Michaels sought to compel arbitration, the Kelleys dismissed that second state court action without prejudice and filed a Statement of Claim before the National Association of Securities Dealers (NASD) (NASD Claim).

The Kelleys' NASD Claim against Michaels and PaineWebber made specific allegations against Michaels of breach of fiduciary duty, churning, making unsuitable investments, and negligence. It alleged that PaineWebber breached its fiduciary duty to the Kelleys, committed fraud and 10(b)–5 violations, allowed unsuitable investments, and failed to supervise Michaels.[2] The Kelleys sought actual and punitive damages from PaineWebber and Michaels.

After five days of hearings, a three-member panel of arbitrators made the awards in favor of the Kelleys that are the subject of this appeal. The Kelleys then filed suit in federal district court pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–15, to confirm the award. After the district court confirmed the arbitration award Michaels appealed.

■■ Our standard of review in cases confirming arbitration awards is the same as for any other district court decision, "accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo." *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995). We must consider, of course, the district court's standard of review, that it will set aside the arbitrator's decision "only in very unusual circum-

stances" such as fraud, corruption, or a decision in manifest disregard of the law. *See id.* at ——, 115 S.Ct. at 1923. As invoked here, the FAA permits vacating an arbitration award when

> the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made [or]
>
> .     .     .     .     .
>
> awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

9 U.S.C. §§ 10(a)(4) & 11(b). However, "[s]o long as an arbitrator draws his decision from the parties' agreements, a reviewing court is generally precluded from disturbing the award." *Seymour v. Blue Cross/Blue Shield,* 988 F.2d 1020, 1022 (10th Cir.1993) (citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987)).

## II

■ We first address Michaels' argument that the arbitrators exceeded their authority by entering an award on a matter that was not submitted because the Kelleys failed to request punitive damages for Michaels' conduct while at Merrill Lynch. Michaels makes several arguments that address a perceived lack of symmetry in the Kelleys' NASD Claim, the arbitration award, and the district court order confirming that award. Michaels relies on the Kelleys' "Demand for Relief"[3] in their NASD Claim and argues that the allegations against him have been segregated so as to specifically not seek puni-

---

**2.** The claim alleged that PaineWebber was aware of churning and excessive trading, and had charged improper exit fees upon liquidation of the Kelleys' accounts. The Kelleys also asserted that in allowing Michaels to voluntarily resign that PaineWebber effectively concealed Michaels' wrongdoing from his clients who would not otherwise have followed Michaels from Paine-Webber to Merrill Lynch with their accounts.

**3.** The "Demand for Relief" in the NASD Claim reads as follows:

21. Based upon the foregoing, Claimants are entitled to the following relief:

From PaineWebber and Michaels:
a. Actual damages of $30,000;
b. Interest as allowed by law;
c. Punitive damages in an amount that will deter others from doing what Respondents did to Claimants; and
d. Legal fees and costs.
From Michaels:
a. Portfolio losses of $220,000 for damages at Merrill Lynch,
b. Lost opportunity damages of $72,725.
App. 54–55.

tive damages for his conduct while at Merrill Lynch. Michaels also asserts that the arbitration award itself characterized the Kelleys' requested relief as not seeking punitive damages against Michaels for his Merrill Lynch activity. The arbitration panel, substantially paraphrasing the Demand for Relief, stated

> Claimants requested actual damages in the amount of $30,000.00, interest as allowed by law, punitive damages, legal fees, and costs against PaineWebber and Michaels. Claimants also requested portfolio losses in the amount of $220,000.00 for damages at Merrill Lynch, and lost opportunity damages of $72,725.00.

App. 84. Michaels also points out that the district court order confirming the award concluded that "the arbitration [panel] *could have* interpreted the request for punitive damages to cover all alleged wrongdoing of Michaels no matter where he was employed." *Id.* at 5 (emphasis added). He then asserts that this language essentially conceded that the arbitration panel reached outside the specific claims the Kelleys submitted in an effort to award punitive damages for Michaels' Merrill Lynch activity. We disagree.

The Kelleys' second state court action is attached to and referenced twice in their NASD Claim. That state petition clearly requests punitive damages from Michaels for his actions while employed at Merrill Lynch. App. 60–62. The NASD Claim also notes that the Kelleys had "voluntarily dismissed the state court action in deference to this arbitration proceeding." *Id.* at 51. The Kelleys thereby incorporated the allegations of their state action into their NASD Claim, which initiated the arbitration case, and sought punitive damages against Michaels for his Merrill Lynch conduct.

The arbitrators' statement of the Kelleys' "Relief Requested" can fairly be read as seeking punitive damages from Michaels regardless of where he was employed. The NASD Claim sets out the alleged wrongful behavior by Michaels in some detail in each of its "causes of action." The first, second, fourth, fifth, sixth, and seventh cause each reference behavior by Michaels while at Merrill Lynch. The arbitrators' award tracked these counts, finding for the Kelleys on each one. We have no doubt that the arbitrators intended the punitive damages award to encompass Michaels' behavior at Merrill Lynch. The district court language simply endorses as a permissible reading of the NASD Claim (and attached state court pleading) the arbitrators' interpretation of those documents. This was proper under the scope of review applicable to arbitrators' decisions.

### III

■ We next address whether an arbitral award of punitive damages was contemplated by the parties' agreements. The brokerage agreements provided for binding arbitration of "all controversies." Likewise, those agreements designate that arbitration "shall be in accordance with the rules in effect of . . . [the] National Association of Securities Dealers, Inc." App. 17, 24 (PaineWebber agreements); Supp.App. tabs 4 & 5, ¶ 11 (Merrill Lynch agreements). The Uniform Submission Agreement requested arbitration "in accordance with the Constitution, By-Laws, Rules, Regulations and/or Code of Arbitration Procedure of the [NASD]." Supp.App. tab 6, ¶ 1. Section 1 of the NASD Code of Arbitration Procedure applies "for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association." Supp.App. tab 7. And the NASD arbitrators' manual contemplates that they may award punitive damages. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995).

Michaels' argument against the punitive damages award is that it was contrary to the designations in the brokerage agreements that New York law would govern the resolution of disputes, because New York law precludes arbitrators from awarding punitive damages. *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). The Supreme Court's recent opinion in *Mastrobuono,* which involved identical contentions to those Michaels advances and an identical arbitration clause, disposes of this argument.

There a panel of arbitrators awarded punitive damages in favor of two investors alleging mishandling of their account. The client agreement provided for arbitration of "any controversy" under NASD (or other specified rules). *Mastrobuono,* —— U.S. at ——, 115 S.Ct. at 1217. The agreement, like the one before us, was silent about claims for punitive damages, but designated the agreement "shall be governed by the laws of the State of New York." *Id.* Although New York case law prohibits arbitral awards of punitive damages, the Court noted that "the FAA ensures that [parties'] agreement[s] will be enforced according to [their] terms even if a rule of state law would otherwise exclude such claims from arbitration." *Id.* at ——, 115 S.Ct. at 1216. The opinion references the common law rule that ambiguous contract language should be construed against the drafter. *Id.* at ——, 115 S.Ct. at 1219. The Supreme Court then held that the contractual choice of law clause did not automatically invalidate an otherwise proper arbitration award for punitive damages, noting:

> the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other. In contrast, respondents' reading sets up the two clauses in conflict with one another: one foreclosing punitive damages, the other allowing them. This interpretation is untenable.

*Id.* at ——, 115 S.Ct. at 1219. The *Mastrobuono* holding compels our conclusion that the arbitration panel did not exceed its authority by awarding the Kelleys punitive damages despite the choice of New York law.

### IV

Michaels argues that the punitive damages award was excessive as a matter of law. He focuses on the large disparity between the net actual damages award of $2,750 and the punitive damages award of over $500,000. However, the arbitration panel awarded the Kelleys actual damages of $292,750. Michaels then received a setoff of $290,000 (the amount of the Merrill Lynch settlement in favor of the Kelleys) against the actual damages award. Thus, the punitive damages award was less than twice the actual damages before the setoff. This is not inherently unreasonable and under the limited standard of review applicable to arbitration awards, is not subject to modification by this court.

Michaels argues that the punitive damages award violated due process. The Supreme Court has endorsed a three-tiered approach when assessing if a punitive damages award violates due process. *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 17, 20–21, 111 S.Ct. 1032, 1042–43, 1044–45, 113 L.Ed.2d 1 (1991). Michaels does not specify how this approach was violated; instead he simply recharacterizes his position that the Kelleys did not seek punitive damages, that the punitive damages award was excessive, and that New York law precludes the punitive damages award, as due process violations. We have already disposed of the substance of these arguments and will not repeat them here.

AFFIRMED.