**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COHIG & ASSOCIATES, INC.,

        Petitioner - Appellant,

v.

NORMAN STAMM,

        Respondent - Appellee.

No. 97-1119

(D.C. No. 95-D-2083)

(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **EBEL**, Circuit Judges.

Appellant Cohig & Associates, Inc. [Cohig], a securities broker-dealer, seeks vacation of an award entered against it in an arbitration proceeding conducted by the National Association of Securities Dealers, Inc. [NASD]. Cohig appeals the district court's confirmation of the award in favor of Appellee

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Norman Stamm.

Mr. Stamm filed a *pro se* claim with the NASD alleging that he suffered losses as a customer of Kober Financial Corp. [Kober Financial],[1] another securities broker-dealer, resulting from its material misrepresentations regarding the stock of Brush Creek Mining and Development [Brush Creek]. Mr. Stamm transferred his IRA and securities account to Kober Financial when his son, Neil Stamm, entered its brokerage training program. Mr. Stamm purchased shares of Brush Creek after Kober Financial allegedly represented to his son that Brush Creek was in strong financial condition and would increase in value quickly. According to a Brush Creek internal audit, however, its financial viability was in "substantial doubt." R., Vol. I at 17. After Neil Stamm left Kober Financial, Mr. Stamm's accounts were transferred to another account representative. This representative, who allegedly considered Brush Creek a weak and speculative stock, also eventually left Kober Financial and managed Mr. Stamm's accounts from another brokerage service.

Mr. Stamm claimed that his Brush Creek shares were reversely split which reduced their total value from $22,961 to $2,220. Id. at 14-15, 168. He alleged that Cohig was liable for those losses because Cohig took over the assets of

---

[1] Kober Financial is a subsidiary of Kober Corporation. Cohig's parent company is Cherry Creek Investments [CCI]. Mr. Stamm's claim against Cohig implicates the brokerage actions of Kober Financial.

-2-

Kober Financial.  Cohig moved to dismiss contending that an asset purchaser cannot be held liable for the misconduct of the asset seller under these facts.  Cohig submitted evidence to the arbitrator concerning the general rule of and the exceptions to successor liability.

After considering the "proof of the [p]arties," id. at 169, the arbitrator awarded Mr. Stamm $20,741, plus interest.[2]  Cohig filed a motion to vacate the award in the district court on the basis that the award was arbitrary and capricious and in manifest disregard of the law.  The district court confirmed the award holding that, even if the arbitrator's factual conclusions were erroneous and his application of the law to those facts was erroneous, the "award is not open to review on the merits."  Id. at 229 (citing Checkrite of San Jose, Inc. v. Checkrite, Ltd., 640 F. Supp. 234, 237 (D. Colo. 1986)).  The court also held that the theory of *de facto* merger supported the award.  See id. at 229-30.  The court found that "[t]here has been nothing presented here that even suggests that the arbitrator's decision was not the result of careful consideration of Cohig's arguments."  Id. at 229.  Cohig asserts that the district court erred in failing to vacate the award for three reasons.  We address each argument in turn.

_____

   [2] Because both parties agreed to submit the matter to arbitration under the NASD's Simplified Rules, the arbitrator based his decision "solely upon the pleadings and evidence filed by the parties" without a hearing.  R., Vol. I at 181 (NASD CODE OF ARBITRATION PROCEDURE § 10302(f) (1996)).

In reviewing a district court's confirmation or vacation of an arbitration award, we review its factual findings for clear error and questions of law *de novo*. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995); Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 849 (10th Cir. 1997). Our review, however, is restricted by the finality that courts should afford the arbitration process. "Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited." Foster v. Turley, 808 F.2d 38, 42 (10th Cir. 1986); see Denver & Rio Grande W. R.R. Co., 119 F.3d at 849; Litvak Packing Co. v. United Food & Commercial Workers, 886 F.2d 275, 276 (10th Cir. 1989) ("Our review of arbitration awards is among the narrowest known to the law."). "We must consider . . . that [the district court] will set aside the arbitrator's decision 'only in very unusual circumstances' such as fraud, corruption, or a decision in manifest disregard of the law." Kelley v. Michaels, 59 F.3d 1050, 1053 (10th Cir. 1995) (quoting First Options, 514 U.S. at 942).

Cohig argues that the district court erroneously confirmed the award on the basis of a legal theory of successor liability, *de facto* merger, which was not presented to the arbitrator by Mr. Stamm. Cohig contends that because Mr. Stamm raised the *de facto* merger theory for the first time at the district court

hearing, the arbitrator could not have relied on this theory in entering the award. Mr. Stamm asserts that Cohig itself presented the various legal theories, including *de facto* merger, on which the arbitrator could have based his decision. He argues that because the law on *de facto* merger was submitted to the arbitrator, even though it was submitted by Cohig, the arbitrator could have properly relied on it in determining an award.

An arbitration award may be based only upon those theories or matters which may "fairly be read" as included in the arbitration submissions. Kelley, 59 F.3d at 1054. The NASD Code of Arbitration Procedure, which guided this arbitration, states that "the arbitrator shall decide the dispute, claim or controversy solely upon the pleadings and evidence filed by the parties." R., Vol. I at 181 (NASD CODE § 10302(f)). The NASD Code does not dictate that when an arbitrator makes an award he may consider only the pleadings and legal authority submitted by the party in whose favor he awards. Cohig has presented no law, and we can find none, that requires an arbitrator to base an award only on the prevailing party's submissions without examining the submissions of the other party. If, during an arbitrator's examination of the law, he finds that the law, when applied to the pertinent facts, demands a certain result, he need not refrain from imposing that result merely because it disfavors the party who presented the law. Further, Cohig has presented no authority to support its contention that the

district court's confirmation erroneously relied on a legal theory not presented by Mr. Stamm to the arbitrator. This argument is contrary to principles of law requiring a court to review all the evidence before rendering a decision. Mr. Stamm succinctly stated at oral argument a realistic yet ironic truth about the practice of law: Occasionally, the opposing party proves your case for you or you inadvertently prove your opponent's case. This may occur in litigation or arbitration and likely occurred here, especially considering Mr. Stamm's *pro se* status.

We construe Mr. Stamm's *pro se* pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). His initial claim against Cohig states that Cohig has "taken over the assets of Kober Financial." R., Vol. I at 11. Although not responding to a precise statement of the law supporting the relief requested by Mr. Stamm, Cohig submitted to the arbitrator the law on successor liability, which included the theory of *de facto* merger. Cohig's assertion that no successor liability exists demonstrates at least that it understood from Mr. Stamm's plainly worded complaint that he believed Cohig was liable as the successor to Kober Financial. The arbitrator is entitled to make the same reasonable inference. We conclude that the *de facto* merger theory of successor liability was properly before the arbitrator because it was part of the material submitted by one of the parties.

-6-

Although the claimant did not use the magic words or himself present the law of *de facto* merger, the district court did not erroneously confirm the award.

Cohig also argues that the district court's confirmation of the award was erroneous because the arbitrator acted in manifest disregard of the law. We have previously characterized the "manifest disregard" standard as "willful inattentiveness to the governing law." Jenkins v. Prudential-Bache Sec., Inc., 847 F.2d 631, 634 (10th Cir. 1988). To find manifest disregard, "there must be some showing in the record, other than the result obtained, that the arbitrator[] knew the law and expressly disregarded it." Prudential-Bache Sec., Inc. v. Tanner, 72 F.3d 234, 240 (1st Cir. 1995) (internal quotation marks and citation omitted). "An arbitrator's erroneous interpretations or applications of law are not reversible." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463 (10th Cir. 1995); see Wilko v. Swan, 346 U.S. 427, 436-37 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986) (stating that manifest disregard "clearly means more than error or misunderstanding with respect to the law"). Cohig asserts two bases for its manifest disregard claim.

Cohig first argues that the arbitrator displayed manifest disregard for the law of successor liability in entering an award against Cohig because the facts in

the record do not support a finding of *de facto* merger. Cohig contends that the facts were not disputed and, therefore, the arbitrator must have acted in manifest disregard of the law because he did not properly apply the law to those facts.

Generally, a company that acquires all, or substantially all, of the assets of another company is not liable for the debts and liabilities of that seller unless (1) there is an express or implied agreement to assume such debts; (2) the transaction amounts to a merger or a consolidation; (3) the purchasing corporation is a mere continuation of the selling company; or (4) the "transaction is entered fraudulently in order to escape liability for such debts." Florom v. Elliot Mfg., 867 F.2d 570, 575 n.2 (10th Cir. 1989); see Alcan Aluminum Corp., Metal Goods Div. v. Electronic Metal Prods., Inc., 837 P.2d 282, 283 (Colo. App. 1992); Ruiz v. ExCello Corp., 653 P.2d 415, 416 (Colo. App. 1982). Under Colorado law, a *de facto* merger may exist if there is evidence suggesting (1) continuity of management, personnel, physical location, assets, and business operations; (2) continuity of shareholders; (3) cessation of the seller's business and liquidation of its assets; (4) assumption by the purchaser of those liabilities of the seller necessary to continue uninterrupted the seller's former business operations. See Johnston v. Amsted Indus., Inc., 830 P.2d 1141, 1146-47 (Colo. App. 1992); cf. Ekotek Site PRP Comm. v. Self, 948 F. Supp. 994, 1002 (D. Utah 1996); V.C. Video, Inc. v. National Video, Inc., 755 F. Supp. 962, 969 (D. Kan. 1990). The

-8-

absorbing corporation receives the added capital and franchise of the merged corporation and holds itself out to the world as continuing the business of the seller.

Although the arbitrator in this case did not make explicit factual findings and did not explain his reasons for the award, the Supreme Court has held that an "award may be made without explanation of [the arbitrator's] reasons and without a complete record of [the] proceedings." Wilko, 346 U.S. at 436. If the court can find any "argument that is legally plausible and supports the award," then it must confirm the award. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995). Our review of the record indicates that the facts are not as undisputed as Cohig contends; certain facts in the record could support a *de facto* merger between Cohig and Kober Financial.[3] Mr. Stamm submitted a form letter he received from Kober Financial stating that securities accounts at Kober Financial would be transferred to Cohig along with the account executives. The sale-purchase agreement states that Kober Financial affirmatively covenants that

---

[3] What Cohig has characterized in its brief as the elements of a *de facto* merger, see Appellant's Opening Br. at 18, actually describes an expanded *de facto* merger theory, "continuity of the enterprise," and does not include the requisite continuity of shareholders. See Johnston, 830 P.2d at 1146. Assuming that Cohig unintentionally misrepresented this law to the arbitrator, the facts in the record also could support successor liability on a "continuity of the enterprise" theory. Even though this form of successor liability is not legitimate in Colorado, see id. at 1147, the arbitrator's possible erroneous application of the law is not reversible. See ARW Exploration Corp., 45 F.3d at 1463.

it will transfer all existing customer accounts and account representatives to Cohig. Mr. Stamm presented to the arbitrator a Cohig Account Statement showing that his Kober Financial account was in fact transferred. The record shows that Cohig assumed leases for or sublet Kober Financial's offices, furniture, and equipment. The arbitrator could have concluded that these facts satisfied the *de facto* merger theory's requirement of continuation of business operations, personnel, management, location, and assets.

The record reveals some dispute about the extent to which Kober Financial's assets were purchased by Cohig. Mr. Stamm presents this factual question by asserting that Cohig "[took] over the assets of Kober Financial." R., Vol. I at 11. Cohig acquired assets from Kober Financial valued at $350,000 in cash and $188,000 in furniture and equipment. See id. at 41, 46, 55. Cohig, however, argues that the record shows that Kober's total assets were valued at $6 million and that it only purchased $188,000 worth of Kober's assets. To emphasize the cloudy nature of the record concerning "assets," we point out Cohig's interchangeable use of the name "Kober" for both Kober Financial and its parent company, Kober Corp., which are two separate corporate entities. It is possible that the arbitrator found, perhaps mistakenly, that the $6 million in assets were attributable to Kober Corp., not to Kober Financial. The arbitrator could have found that Cohig totally assumed the assets and liabilities of Kober Financial

-10-

while Kober Corp. continued its various operations and retained $6 million in assets.

The arbitrator could have found that the continuity of shareholders requirement was satisfied when Kober Corp. and Kober Financial became shareholders of Cohig. See id. at 41. Cohig's parent company, CCI, on behalf of Cohig, transferred to Kober Financial and Kober Corp. approximately fifteen percent of CCI's preferred stock and a stock option to purchase up to forty percent of its common stock. See id. 41, 56.

Cohig's own statements and submissions to the arbitrator also could support a *de facto* merger theory of liability. A vice president of Cohig stated in his affidavit that Kober Corp. "decided to discontinue its securities brokerage operation (Kober Financial)." Id. at 46. Cohig represented that "Kober [Financial] was not in a position to continue in the business of securities brokerage," Appellant's Opening Br. at 21, and that Kober Financial "intended to cease its brokerage business." R., Vol. I at 41. Cohig also stated that it performed a service to the Kober Financial customer by servicing the Kober Financial accounts because the brokerage firm was "go[ing] out of business." Id. at 221. According to Cohig, a salutary function of its asset purchase of Kober Financial was that the seller's clients had the opportunity to move their accounts to a functioning brokerage where they could continue to trade and access their

-11-

securities.  From these statements, the arbitrator could have found that Cohig

assumed the liabilities of Kober Financial necessary to continue uninterrupted the

business operations formerly performed by Kober Financial.  The statements also

support a possible finding that Kober Financial ceased operations and terminated

or liquidated its brokerage business.  There is no evidence in the record that

Kober Financial continued other businesses after the transaction with Cohig.

Cohig also contends that the arbitrator could not have found a *de facto*

merger because of the inclusion of a paragraph in the sale agreement between

Cohig and Kober Financial disclaiming successor liability.  See id. at 55-56, 217-

19.  Notwithstanding this expression of Cohig's intent not to assume liability, the

arbitrator could have found a *de facto* merger if he believed the facts supported

the requirements of such a merger.[4]  Thus, the district court did not creatively

invent the *de facto* merger theory to support the arbitrator's award.  Instead, the

court merely found that a plausible argument existed which could support the

award.  See Jaros, 70 F.3d at 421.  Because an arbitrator has the discretion to

view evidence and determine credibility, the district court correctly stated that

"[i]t could well be that the arbitrator looked at [Cohig's] Motion to

---

[4] Our review of the record reveals that the arbitrator, whether correctly or erroneously, also could have interpreted the disclaimer paragraph, in conjunction with the evidence of Kober Financial's regulatory and disciplinary problems, see R., Vol. I at 52-54, as an attempt to fraudulently avoid liability. See Florom, 867 F.2d at 575 n.2 (listing fraudulent transfer as a theory of successor liability).

Dismiss, . . . [and] at the other evidence and somehow concluded that despite th[e] provision in the contract [disclaiming liability] there had been in effect a de facto merger, so liability was actually being assumed." R., Vol. I at 219-20.

Cohig's second manifest disregard argument claims that, because the facts in the record do not support any successor liability, the arbitrator must have disregarded the law in accordance with Mr. Stamm's express request for the arbitrator to do so. In his response to Cohig's amended answer, Mr. Stamm stated that arbitration is not a legal action and requested that the arbitrator's decision "assure[s] the full responsibility towards the public and the good will and moral result." Id. at 167. Cohig has mischaracterized this statement. Mr. Stamm, a *pro se* complainant, did not "expressly argue[] that an arbitrator is free to dispense his or her own personal brand of justice, without regard for the law." Appellant's Reply Br. at 8. Mr. Stamm was merely urging the arbitrator to consider the policy supporting his claim. It is also likely that Mr. Stamm, a 78-year-old retiree representing himself, was not aware of the legal implications of an arbitration. We are confident that he is now fully cognizant of those implications.

Contrary to Cohig's assertion, the Eleventh Circuit's reversal of an arbitration award where a party "flagrantly and blatantly urged" the panel of arbitrators to expressly disregard the law is not pertinent to the facts in this case. Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997).

-13-

The court in Montes limited its holding to situations where (1) the record does not clearly support the award; (2) the record and award show the arbitrators understood that a party expressly urged disregard for the law; and (3) neither the record nor the award refuted the suggestion that the law was disregarded. See id. at 1462-64. In this case, neither the record nor the award indicates that the arbitrator viewed Mr. Stamm's innocuous statement as urging disregard of the law. Mr. Stamm's statement, viewed in the context of his status as an elderly *pro se* individual, differs markedly from the more explicit assertions of Shearson Lehman Bros., a sophisticated business entity undoubtedly represented by counsel. More importantly, as we explained above, the record in this case could support an award and thereby refute an inference from Mr. Stamm's statement that the arbitrator disregarded the law. See id. at 1461-62 & n.8. Cohig cannot claim that Mr. Stamm simultaneously failed to present any law on successor liability and urged the arbitrator to disregard that precise law. The district court correctly determined that nothing in the record shows that the arbitrator expressly or manifestly disregarded the law.

Finally, Cohig argues that the district court's confirmation of the arbitration award was erroneous because the award controverts the public policy of arbitration and the public policy encouraging asset purchases in the securities industry. Cohig's public policy arguments, however, merely rehash its other

-14-

substantive efforts to persuade us that the award should be vacated and that the arbitrator acted in manifest disregard of the law.  Because we hold that (1) the *de facto* merger theory was properly presented to the arbitrator, (2) the facts in the record could reasonably be construed by the arbitrator to support a possible finding of *de facto* merger, and (3) the record does not show a manifest disregard of the law by the arbitrator, we conclude that the general public policy of encouraging arbitration is not hindered by this award.  We need not determine whether the policy behind encouraging arbitration awards is preempted by an alleged public policy encouraging asset purchases in the securities industry.  See Denver & Rio Grande W. R.R. Co., 119 F.3d at 850.

AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge