UNITED STATES of America for the Use and Benefit of NATIONAL ROOFING SERVICES, INC., Plaintiff,

v.

LOVERING–JOHNSON, INC., and Hartford Accident and Indemnity Company, Defendants.

No. Civ.A. 97–1528–KHV.

United States District Court, D. Kansas.

April 28, 1999.

Charles E. Millsap, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for plaintiff.

David E. Rogers, Foulston & Siefkin L.L.P., Wichita, KS, Dennis L. Gillen, Depew and Gillen L.L.C., Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Plaintiff's Motion And Application To Confirm Arbitration Award and Enter Judgment* (Doc. # 12) filed December 24, 1998, and *Defendants' Motion To Vacate Award Of Arbitrator* (Doc. # 13) filed January 14, 1999. For the reasons set forth below, plaintiff's motion to confirm the arbitration award is sustained and defendants' motion to vacate is overruled.

### Factual Background

Lovering–Johnson, Inc. (Lovering) was the general contractor for a construction project at McConnell Air Force Base in Wichita, Kansas. Lovering contracted with National Roofing Services (National

Roofing) to perform roofing work on the project for an hourly rate.

Shortly after National Roofing began work on the project, Lovering questioned the acceptability of its workers and the work they performed. A few weeks later, Lovering told National Roofing to stop work on the project. A dispute then arose as to whether either or both parties had breached the subcontract and the amount of money, if any, either party owed the other.

National Roofing filed suit in federal court. After Lovering answered, the Court granted a stay to allow the parties to arbitrate the dispute as provided in their contract. In the arbitration proceeding National Roofing claimed that Lovering owed $68,557.12 on unpaid invoices; Lovering counterclaimed for $224,385.71. The American Arbitration Association (AAA) appointed Richard Dobson to arbitrate the dispute under the AAA Construction Industry Rules.

Before the arbitration hearing, the parties exchanged the exhibits that they intended to submit at the hearing. Lovering filed a motion which requested that the arbitrator exclude evidence related to other contracts and projects, asserting that many exhibits were not relevant to the instant dispute and that National Roofing had produced them for the sole purpose of prejudicing the arbitrator. The arbitrator allowed National Roofing to present the exhibits and stated that he would afford them the weight they deserved. He also allowed National Roofing to present testimony that a representative of Lovering had indicated that in his opinion, the value of National Roofing's work on the project was around $50,000. Lovering objected to this testimony, which it characterized as evidence of a settlement offer. National Roofing pointed out that the AAA Construction Industry Rules do not include the rules of evidence. The arbitrator did not state whether he would consider the so-called "settlement offer" in reaching his decision. After the hearing, Lovering sub-mitted its written objection to the arbitrator.

On December 18, 1998, the arbitrator ordered Lovering to pay National Roofing $57,635.15. National Roofing then filed its motion to confirm the arbitration award and enter judgment. In response, Lovering filed a motion to vacate the award.

## Standard of Review

The court's power to review an arbitration panel award is quite limited; indeed, it is "among the narrowest known to the law." *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir. 1995). A court will set aside an arbitration award only in "very unusual circumstances." *Kelley v. Michaels,* 59 F.3d 1050 (10th Cir.1995). The Federal Arbitration Act (FAA) enumerates the grounds on which a court may vacate an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a). Although courts are not limited to these statutory grounds, they have recognized only a few non-statutory grounds on which to vacate an arbitration

award. *See Jenkins v. Prudential–Bache Secs., Inc.,* 847 F.2d 631, 633 (10th Cir. 1988); *see also Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.,* 119 F.3d 847, 849 (10th Cir.1997) (listing judicially created grounds for vacatur, *e.g.,* the arbitration award violates public policy, the arbitration award is based on a manifest disregard of the law, the arbitrator did not conduct a fundamentally fair hearing).

### Analysis

■ Lovering asserts that the Court should vacate the arbitration award because the arbitrator did not conduct a fundamentally fair hearing. Specifically, Lovering asserts that the arbitrator improperly heard evidence of an offer of settlement by Lovering and also heard evidence of irrelevant transactions. Based on these same facts, Lovering also asserts that the Court should vacate the arbitration award on the statutory grounds that the arbitrator is guilty of misbehavior by which the rights of Lovering were prejudiced, 9 U.S.C. § 10(a)(3), and that the arbitrator exceeded his powers, 9 U.S.C. § 10(a)(4).

Despite these statutory arguments, Lovering primarily contends that the arbitrator deprived it of a fundamentally fair hearing, citing *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.,* 22 F.3d 1010 (10th Cir.1994). In *Bowles,* the Tenth Circuit outlined what constitutes a "fundamentally fair hearing," as follows:

> The courts seem to agree that a fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decisionmakers are not infected with bias. See *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir.) ("[T]he Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues"), *cert. denied,* 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992); *Employers Ins. of Wausau,* 933 F.2d at 1491 (fair hearing is based on notice, opportunity to be heard and to present evidence, and lack of biased decisionmaking); *Sunshine Mining Co. v. United Steelworkers of Am.,* 823 F.2d 1289, 1295 (9th Cir.1987) ("hearing is fundamentally fair if it meets the 'minimum requirements of fairness'—adequate notice, a hearing on the evidence, ... impartial decision") (quoting *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir.1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965)); *Hoteles Condado Beach,* 763 F.2d at 39 (arbitrator must give each party an adequate opportunity to present evidence and arguments).

22 F.3d at 1013.

In *Bowles,* one party, Stifel, sought to vacate an arbitration award after counsel for Bowles had presented evidence of a settlement offer. The Tenth Circuit addressed the question "whether deliberate, egregious, and repeated breaches of the judicial rules of evidence before an arbitration panel warrant the vacation of the arbitration award." *Id.* at 1011. The Court stated:

> Stifel has not proven it was subjected to a fundamentally unfair hearing. Conduct by Bowles' attorney was within the broad procedural rules of arbitration agreed to by Stifel. Courts have no power to draft a contract between the parties. The rules of arbitration agreed to by the parties do not explicitly condemn the communication of settlement offers to the arbitrators.
>
> What the reasons for this omission might be, this court does not know. It could be that the professionalism of counsel has previously prevented this problem from arising. In view of counsel's statement to this court during oral argument that he routinely conveys settlement offers to arbitrators, it could mean the arbitration rules mean what they say; i.e., the arbitrators will decide what evidence is material and relevant. This court has no power to judicially

impose our rules of evidence on an arbitration proceeding.

*Id.* at 1013.

*Bowles* would appear to preclude Lovering's argument that the introduction of evidence of a settlement offer deprived it of a fundamentally fair hearing. Lovering argues, however, that *Bowles* is distinguishable for two reasons. First, in *Bowles* the Tenth Circuit focused on the *attorney's* role in introducing the settlement offer, while Lovering objected to the *arbitrator's* conduct in allowing the evidence of settlement. This is a distinction without a difference.

Second, Lovering points out that in *Bowles* the arbitrators expressly stated that they would not consider the settlement offer nor would they base their decision on it. 22 F.3d at 1013. Further, the Tenth Circuit stated that "[t]he communication of a settlement offer to arbitrators *who declare they would ignore it,* standing alone, does not produce a fundamentally unfair hearing". *Id.* at 1013–1014 (emphasis added). Lovering notes that the arbitrator in this case did not state that he would not consider the settlement offer, and asserts that *Bowles* is limited to situations where the arbitrator specifically disclaims any reliance on the settlement offer. But the essential rationale underlying *Bowles* suggests otherwise. As the Tenth Circuit noted in *Bowles:*

> The result of this opinion may well be to encourage counsel to communicate settlement offers to arbitrators. This opinion might also encourage counsel to communicate other evidence to arbitrators which a court would regard as highly improper. This is for the parties to arbitration to decide and control as arbitration is possible only if the parties agree to arbitrate and how to arbitrate.

*Id.* at 1013. *Bowles* placed parties on notice that if they wished to arbitrate under rules which prohibit the introduction or consideration of settlement offer evidence, they should contract for such rules. *See Gallus Invs., L.P. v. Pudgie's Famous Chicken, Ltd.,* 134 F.3d 231, 234 (4th Cir. 1998) (arbitrators justified in receiving evidence of settlement offers because offers relevant to claims of mitigation of damages; "whether arbitrators were right or wrong under strict evidentiary standards," use of such evidence not fundamentally unfair).

 The factual evidence refutes Lovering's contention that it failed to receive a fundamentally fair hearing. The arbitrator allowed both sides to present evidence, cross-examine witnesses, and make objections. As the Tenth Circuit stated in *Bowles:*

> Arbitration provides neither the procedural protections nor the assurance of the proper application of substantive law offered by the judicial system. Those who choose to resolve a dispute by arbitration can expect no more than they have agreed. One choosing arbitration should not expect the full panoply of procedural and substantive protection offered by a court of law. In short, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the [perceived] simplicity, informality, and expedition of arbitration.'"

*Bowles,* 22 F.3d at 1011 (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 29–33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)) (further quotations omitted).[1] In short, for all of these reasons, the Court must reject Lovering's argument that the arbitrator failed to conduct a fundamentally fair hearing. For identical reasons the Court finds that in receiving evidence of the "settlement offer" and failing to dis-

---

1. National Roofing also asserts that the record contains no evidence the settlement offer influenced the arbitrator's decision. Lovering counters that a comparison of the settlement figure of $50,000 with the award of $57,-

635.15 suggests that the evidence did influence him. Lovering also argues that when a jury hears materially prejudicial material, the error is deemed reversible.

claim any reliance on it, the arbitrator was not guilty of misbehavior which prejudiced the rights of Lovering under 9 U.S.C. § 10(a)(3).

█ Lovering also contends that the Court should vacate the arbitration award because the arbitrator expanded the scope of the arbitration proceeding and exceeded his power. *See* 9 U.S.C. § 10(a)(4) (court may vacate award where arbitrators exceeded their powers, or so imperfectly executed them, that mutual, final and definite award upon subject matter submitted was not made). Lovering reasons that by admitting documents and testimony about lawsuits and projects that did not involve National Roofing, the arbitrator exceeded his powers to arbitrate a dispute over a particular contract, and failed to provide a fundamentally fair hearing.

The Court notes that under the arbitration rules, failure to allow a party to present relevant evidence is one of the few bases for vacating an award. It follows that an arbitrator would err on the side of allowing evidence of questionable relevance and then give it the weight it deserves, as the arbitrator here stated. Further, the arbitrator never stated that he relied on the evidence to which Lovering objects. The Court will not presume that he relied upon evidence that was irrelevant or otherwise improper. Further, without a transcript or copies of all of the contested exhibits, it is impossible to determine the relevance of any particular piece of evidence.

Lovering also objects to the admission of documents (most of which are not in the record before the Court) because it states that it did not have sufficient notice to call the authors as witnesses. On this record, the Court cannot say that admission of the objectionable documents violated Lovering's right to a fundamentally fair hearing. Neither can the Court find that the arbitrator expanded the scope of the proceeding so as to violate 9 U.S.C. § 10(a)(4).

*Interest*

█ National Roofing asks the Court to award pre-judgment interest from the time of the arbitration award to the date of this judgment. *See Fort Hill Builders, Inc., v. National Grange Mut. Ins.*, 866 F.2d 11, 14–15 (1st Cir.1989) (under federal law, court should award interest from date of arbitration decision); *Sun Ship, Inc. v. Matson Navigation Co.* 785 F.2d 59, 63 (3rd Cir.1986) (confirmed arbitration award under Federal Arbitration Act bears interest from date of award, not date of judgment confirming award). Lovering contends that this Court should not award interest,[2] noting a split in authority whether federal or state law governs the entitlement to post-award, prejudgment interest on arbitration awards. *See AlphaGraphics, Inc. v. Shapiro*, 935 F.Supp. 1012, 1014 (N.D.Ill.1996). *Compare Northrop Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155 (9th Cir.1988) (state law determines rate of post-award, prejudgment interest in diversity action enforcing an arbitration award under FAA), *with Sun Ship, Inc.*, 785 F.2d at 63 (assuming FAA action was federal question and holding that federal law governs both entitlement to and rate of post-arbitration award, preconfirmation-interest).

The instant case is grounded on the federal Miller Act. The Tenth Circuit has addressed the issue of prejudgment interest in a Miller Act case adjudicated in a federal court rather than by arbitration:

"[A]lthough prejudgment interest is ordinarily awarded in federal cases, it is not recoverable as a matter of right. Since prejudgment interest falls within

---

**2.** Although Lovering asserts that this Court should not award any prejudgment interest, it relies in part upon the statement of a leading commentator that the party in whose favor the award is made is entitled to interest only from the date that party first applies to the court for confirmation of that award. *See* Norton, *Postaward, Prejudgment Interest on Arbitration Awards,* 10 Construction Lawyer 21 (Aug.1980). In this case, the arbitrator made the award on December 18, 1998. National Roofing filed its *Motion and Application To Confirm the Arbitration Award* on December 24, 1998.

the "scope of the remedy" available to a Miller Act claimant, it appears that under the authority of *F.D. Rich [Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) ], its allowance must be initially determined as a matter of federal law. Such a determination, however, merely leads us back to state law. Neither the Miller Act nor any other applicable federal law provides standards for the allowance of prejudgment interest. It therefore seems appropriate to look to state law as a matter of convenience and practicality."

*Towerridge v. T.A.O., Inc.*, 111 F.3d 758, 764 (10th Cir.1997) (some internal quotations and citations omitted). The Tenth Circuit held that where the prejudgment interest award was governed by federal law, the court was free to choose any interest rate which would "fairly compensate the plaintiff for the delay in the receipt of payment." *Id.* (citations omitted); *see also Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434 (11th Cir.1998) (interest should be calculated from date of arbitration award rather than date of judicial confirmation: "judgment should reflect what would have happened had the parties immediately complied with the awards instead of going to court, the court should look to the arbitration forum's rules in determining the proper method for calculating post-award interest."[3]), *cert. denied,* —— U.S. ——, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999). *Cf. Pharmacy Management Servs., Inc. v. Perschon*, 622 So.2d 75 (Fla.Dist.Ct.App.1993) (court may not grant *preaward* interest on final arbitral award which states that it is in full settlement of all claims).

On December 18, 1998, the arbitrator awarded National Roofing $57,635.15 and ordered Lovering to pay the award within 30 days. The Court finds that the interest rate which Kansas law provides for post-judgment interest will fairly compensate National Roofing for the lost use of the arbitral award from the date it was due. Kansas law provides that "[c]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due ... from the day of liquidating the account and ascertaining the balance."[4] K.S.A. § 16–201. Thus the Court finds that National Roofing is entitled to interest of 10 per cent per annum on the $57,635.15 arbitration award from January 18, 1999, through the date of this order.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion And Application To Confirm Arbitration Award and Enter Judgment* (Doc. # 12) filed December 24, 1998, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Defendants' Motion To Vacate Award Of Arbitrator* (Doc. # 13) filed January 14, 1999, be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that defendants pay to plaintiff, in addition to the $57,635.15 arbitration award, 10 per cent per annum interest on the award from January 18, 1999, through the date of this order.

The Clerk shall enter judgment accordingly.

---

3. Neither party cites any provision of the Construction Industry Rules of the AAA for a method of calculating post-award interest in these circumstances. In *Industrial Risk*, the court relied on arbitration rules that provided for a default amount of interest on any award not paid within 30 days of the award, based on the prevailing rate in the state where the award was rendered, and applied the Missouri post-judgment interest rate.

4. In Kansas, "[a] claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain." *Equity Investors, Inc. v. Academy Ins. Group, Inc.*, 229 Kan. 456, 668, 625 P.2d 466, 468–69 (1981) (quoting *First Nat'l Bank v. Bankers Dispatch Corp.*, 221 Kan. 528, 537, 562 P.2d 32, 40 (1977)).